UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

No. 15-cr-20740
HON. MARK A. GOLDSMITH

OZZIE McCOLLOUGH,

    Defendant.

_____/

**OPINION AND ORDER**
**DENYING DEFENDANT'S MOTION TO SUPPRESS (Dkt. 14)**

Defendant Ozzie McCollough was charged with (i) one count of possession with intent to distribute a controlled substance (heroin), in violation of 21 U.S.C. § 841(a)(1); (ii) two counts of felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); and (iii) one count of possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). See Indictment (Dkt. 10). He subsequently filed a motion to suppress (Dkt. 14), seeking to exclude all evidence obtained as the result of a search of his residence on October 8, 2015. The Government filed a response to the motion (Dkt. 16), and oral argument was heard on the motion.[1] As discussed below, the Court now denies Defendant's motion.

### I. BACKGROUND

This case arises out of a single package sent Priority Express via the United States Postal Service. The package was mailed on October 6, 2015, from Perris, California, to "Lisa Williams" in Detroit, Michigan, weighing five pounds and 14 ounces, with $63.50 in postage. Det. Reizin Aff., Ex. A to Def. Mot., ¶ 2 (Dkt. 14-2). On October 7, 2015, upon a routine inspection of in-bound Priority Express mail, U.S. postal inspectors selected the parcel for

---

[1] Although Defendant sought an evidentiary hearing in his motion, his counsel agreed on the record at oral argument that no evidentiary hearing was necessary.

further examination based on a number of factors including that: (i) the parcel originated in the southern California area — "a known source area for the illegal distribution of controlled substances"; (ii) the size and weight of the parcel was larger than what is typically sent through Priority Express; and (iii) the parcel bore a handwritten label. Id. ¶ 3.  A narcotics-detecting canine unit was summoned and positively alerted for narcotics. Id.  A federal search warrant was obtained, and a search of the parcel revealed approximately 350 grams of a substance that field-tested positive for heroin. Id.[2]

The affidavit underlying the search warrant stated that the following day, on October 8, 2015, an undercover U.S. postal inspector would pose as a mail carrier and attempt to deliver the parcel to the listed address. Id. ¶ 4.  The affidavit further stated that, "[i]f an individual at the target location or if any individual who identifies themselves as being affiliated with the target location takes possession of the subject parcel and attempts to take it into the target location, probable cause will exist and this warrant will be executed." Id.  The affidavit also sought permission to insert a "beeper" into the parcel, capable only of emitting a tone, designed to alert law enforcement to the movement and opening of the parcel. Id. ¶ 5.

On the scheduled day (October 8), an undercover postal inspector knocked on the target residence to attempt to deliver the parcel.  Gov't Resp. at 5.  A black male — later identified as Defendant — eventually answered the door, took possession of the parcel and placed it inside the residence, and then signed the signature form using the name "Lisa Williams." Id.  Just minutes later, law enforcement executed the search warrant, which led to the discovery of the package containing the heroin, in addition to firearms, ammunition, and drug trafficking paraphernalia. Id. at 5-6.  Defendant was the only person in the residence, and law enforcement also found mail

---

[2] Defendant does not challenge the validity of the underlying federal warrant authorizing the search of the package.

and paperwork in Defendant's name. Id. Defendant's indictment on the drug and firearm charges followed.

## II. ANALYSIS

For a search warrant to be valid, it must be supported by probable cause. U.S. Const. amend. IV ("[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."). To determine whether an affidavit establishes probable cause, an issuing magistrate must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). The Court's review for sufficiency of evidence is limited to the information contained within the four corners of the affidavit. United States v. Coffee, 434 F.3d 887, 892 (6th Cir. 2006).

Defendant's motion argues principally that the affidavit in support of the search warrant failed to articulate any probable cause that Defendant was engaged in criminal activity at the target location, or that the target location was the scene of illegal drug activity. Defendant further claims that the utter lack of information connecting criminal activity to either Defendant or the target location rendered the affidavit "bare bones"; if so, this made it objectively unreasonable for a reasonably well-trained officer to rely on the facts therein as sufficient for probable cause, thereby precluding any reliance on the good-faith exception.

However, these arguments do not address the fact that the warrant at issue here is an anticipatory warrant. Anticipatory warrants rest upon an affidavit showing probable cause that at some time in the future — although not at the time the warrant issued — certain evidence of a crime will be found at a specified place. United States v. Grubbs, 547 U.S. 90, 94 (2006). Typically, execution of these warrants is subject to a condition precedent known as a "triggering condition" — an event that will establish probable cause that the described contraband and/or

3

evidence will be found in the target location. Id. However, a constitutionally valid anticipatory warrant requires not only a fair probability that contraband or evidence of a crime will be found upon the triggering condition's occurrence, "but also that there is probable cause to believe the triggering condition will occur." Id. at 96-97 (emphasis in original).

In this case, the triggering condition was the successful delivery of the parcel containing heroin to an individual at the target residence. Upon delivery and acceptance of the package into the target residence, law enforcement had probable cause to believe that contraband (i.e., the heroin) would be found within the residence. Accordingly, Defendant's arguments in his motion — that there were no facts in the affidavit connecting criminal activity with either the residence or Defendant — are unavailing.

Defense counsel's motion raises an additional argument: the affidavit allegedly contained a second and independent triggering condition that was not satisfied prior to execution of the warrant. Elaborating on this argument during the hearing, defense counsel pointed to the following language in paragraph five, which concerned insertion of the beeper into the parcel:

> Further, in the event the "Beeper" is not triggered in a reasonable period of time, the Affiant intends to enter the dwelling place to recover the parcel and any other narcotics, any evidence of narcotic trafficking or other items described above.

Det. Reizin Aff. ¶ 5. Defense counsel argued that this condition placed an additional safeguard on the execution of the search: law enforcement would not enter the home unless there was additional evidence of criminal activity (i.e., the opening of the package). Defendant also argued that in not specifying what a "reasonable period of time" is before law enforcement may enter the residence, the magistrate judge ceded too much authority in permitting law enforcement to determine what is "reasonable."

The Court disagrees with the defense interpretation of paragraph five of the affidavit. While the affidavit is not the most artfully drafted document, paragraph four clearly spells out

4

that the warrant will be executed upon an individual at the residence accepting the parcel and taking it inside the residence. By contrast, paragraph five does not state that activation of the beeper would be a condition for entry. To the contrary: paragraph five states that the search would be commenced if <u>no</u> activation occurred within a reasonable time. Thus, contrary to the defense argument, paragraph five could not possibly have served as a required second triggering event.[3]

As for the argument that the warrant ceded too much authority to the officers to determine what was a "reasonable" time, that is entirely irrelevant. Because the officers entered the residence immediately after the delivery of the package and without any activation of the beeper, paragraph five was never invoked. See Gov't Resp. at 5 (search was executed "[a] few minutes," after Defendant signed for the parcel). Because the officers never exercised any discretion regarding a "reasonable" time for entry, any undue delegation is of no constitutional significance.

At the hearing, defense counsel also challenged the anticipatory warrant's second probability requirement — that there existed probable cause that the triggering condition would occur, <u>i.e.</u>, the package would be received by someone at the residence. This Court has previously tackled this same question in another case, where it articulated a number of factors relevant to this second probable-cause determination:

> The following factors, if met, would weigh toward a finding of probable cause in these circumstances: (i) the package was on a "sure course" to the residence prior to any police interception or involvement; (ii) there was a high quantity and/or value of contraband in the shipped package; (iii) the contraband was concealed; (iv) an experienced law enforcement agent provided his

---

[3] At the hearing, the Court explored the purpose of inserting a beeper in the package. The attorney for the Government explained that it was designed to bolster the Government's case for establishing possession, because activation would signal the package has been opened. This does not explain why the warrant authorized entry if the beeper were not activated in a "reasonable period of time" after delivery. This mystery is ultimately irrelevant because entry took place immediately after delivery.

>  reasoned belief that additional contraband materials would be found in the residence; (v) there was a lack of evidence that the contraband was sent to the residence on a whim or as part of a set-up; and (vi) there was a high frequency of contraband deliveries from the city or region from which the package was shipped.

United States v. Barnett, No. 12-20500, 2013 WL 2250276, at *5 (E.D. Mich. May 22, 2013). Most of these factors are met here.

First, the affidavit contains facts suggesting that the parcel was on a "sure course" to the target location prior to its interception by law enforcement. The package was addressed to the target location and was en route to the location at the time of the interception. Moreover, the sender expedited the delivery via Priority Express, and affixed almost $64 in postage to the parcel itself. The entire investigation process with respect to the parcel appeared to take just one day (October 7), and the parcel was delivered the following day, just two days after it was initially mailed. Thus, there was no undue delay that might have aroused suspicion in the mind of the recipient. Barnett, 2013 WL 2250276, at *6.[4]

Second, the parcel itself contained approximately 350 grams of heroin. It takes no specialized knowledge to infer that this is a large quantity of product; a reasonable magistrate judge could also reasonably infer that such a quantity carried a high street value. Cf. United States v. McQueen, 966 F.2d 1455, 1992 WL 112279, at *2 (6th Cir. May 20, 1992) (Table) (per

---

[4] Other courts have opined that delay of a package scheduled for expedited delivery may engender suspicion in the recipient, thereby impacting the probability that the triggering event would occur. See United States v. Turner, 491 F. Supp. 2d 556, 559 n.3 (E.D. Va. 2007). The type of corroboration Defendant maintained at the hearing was still necessary — additional facts that would independently tie criminal activity to either Defendant or the target residence — would force law enforcement to delay the scheduled delivery of the package. Depending on the amount of time necessary to gather the requisite intelligence, this requirement would reduce the overall effectiveness of anticipatory warrants themselves. See Barnett, 2013 WL 2250276, at *6 (opining in dicta that a week-long delay may be sufficient to arouse suspicion of police tampering with the package). More importantly, such independent corroborating evidence is not required by the Fourth Amendment when the affidavit details facts and circumstances regarding the package itself sufficient to satisfy the two-prong probable-cause analysis.

curiam) (jury could have found defendant guilty of possession with intent to distribute based, in part, on "the amount of drugs involved, and the street value which could be inferred").

Third, the affidavit was sworn out by Detective Michael Reizin, a member of the Detroit Police Department who is assigned to the Gang Intelligence Team. Det. Reizin Aff. ¶ 1. Detective Reizin has had extensive training in investigating narcotics manufacturing, sales, and trafficking, and has participated in numerous narcotics raids in Detroit. Id. ¶¶ 1, 6. In Detective Reizin's experience, firearms and/or weapons are typically used to protect illegal narcotics activity, and such items have been uncovered in the overwhelming majority of his previous narcotics raids. Id. ¶ 6. Therefore, Detective Reizin was of the opinion that the target residence would contain evidence of drugs, as well as firearms and/or weapons. Id. ¶ 7.

Fourth, there is no evidence that the heroin was sent to the target residence on a whim, or as part of a set-up. One simply does not send 350 grams of heroin on a whim. See United States v. Lawson, 999 F.2d 985, 988 (6th Cir. 1993) ("The magistrate judge was in a position to determine that one does not send six ounces of cocaine through the mail to a specific address on a whim."). Furthermore, the value of the contents of the package suggests that the sender fully expected someone to receive the package; otherwise, the shipper would essentially be throwing out a large and valuable quantity of heroin.

And finally, the affiant avers that the parcel originated in southern California, "a known source area for the illegal distribution of controlled substances." Det. Reizin Aff. ¶ 3. This characterization is reasonable, given California's location on the international border with Mexico, from which massive quantities of illegal substances regularly flow into the United States.

All of these factors support a finding of probable cause that the triggering condition — successful delivery of the package — would occur.

7

Defendant's argument that the affidavit was defective because it says nothing about the monetary value of the heroin or whether the heroin was concealed is unpersuasive. There is nothing in this Court's prior opinion in Barnett that suggests each factor must be present to support a probable cause finding. Nor has Defendant provided any additional authority stating that facts indicating the monetary value of the contraband or the precise nature in which the contraband is packaged and/or concealed is required for a probable cause determination. Indeed, other cases have upheld a probable-cause finding absent one or both of those facts. E.g., Lawson, 999 F.2d at 986 (no facts indicating affidavit supplied approximate monetary value of contraband); Barnett, 2013 WL 2250276, at *1 (affidavit did not contain facts indicating monetary value of contraband or whether contraband was concealed within packaging).[5] Moreover, Defendant's reliance on a "check-list" approach ignores that affidavits are reviewed in a common-sense manner to determine "whether the totality of the circumstances supports a finding of probable cause," and not in a hyper-technical fashion. United States v. Woosley, 361 F.3d 924, 926 (6th Cir. 2004). The same is true with respect to anticipatory warrants. See Lawson, 999 F.2d at 988.

In any event, even if the affidavit did omit certain details necessary for a probable-cause determination, the search should be upheld because the executing law enforcement officers reasonably and in good faith relied on the warrant. See United States v. Ware, 338 F.3d 476, 482 (6th Cir. 2003) (holding executing officers reasonably relied on warrant when law enforcement intercepted a package containing approximately one pound of cocaine and executed search following controlled delivery of the package). The affidavit here is not a "bare bones" affidavit that fails to identify "some connection, regardless of how remote it may have been, between the criminal activity at issue and the place to be searched." United States v. Laughton, 409 F.3d 744,

---

[5] In Barnett, the Government supplied the approximate monetary value of the quantity of cocaine in the package in its response to the defendant's motion to suppress. Barnett, 2013 WL 2250276, at *1. This information was not present in the affidavit itself. Id.

8

750 (6th Cir. 2005) (emphasis in original).  The affidavit stated that upon acceptance into the residence of the package containing heroin, probable cause would exist to search the location. Det. Reizin Aff. ¶ 4.  Thus, not only did the affidavit establish a nexus between the contraband itself and the place to be searched, but all of the factors supporting the second probable-cause determination — that the package would be received by someone at the residence — all serve to connect that residence to concrete criminal activity.  In other words, that the package was on a "sure course" to the target location, the quantity of heroin contained in the package, as well as its origin all suggested that someone at the residence was expecting, and therefore would accept, the package so as to support an inference that the target residence was the site of illegal drug trafficking.  Accordingly, the good-faith exception applies.  United States v. Leon, 468 U.S. 897, 920-921 (1984).

### III.  CONCLUSION

For the reasons set forth above, Defendant's motion to suppress (Dkt. 14) is denied.

SO ORDERED.

Dated:  May 11, 2016              s/Mark A. Goldsmith
Detroit, Michigan                 MARK A. GOLDSMITH
                                  United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 11, 2016.

                                  s/Karri Sandusky
                                  Case Manager

9